FILED

FEB - 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

ELENA COLES                                    )
10118 Campus Way S. #203                       )
Upper Marlboro, MD  20774                      )
301 336-1894                                   )
    Plaintiff,                                )
                                               )
v.                                             )   CASE NUMBER  1:06CV00223
                                               )
DR. FRANCIS J. HARVEY                          )   JUDGE: James Robertson
Secretary                                      )
Department of the Army                         )   DECK TYPE: Employment Discrimination
101 Army Pentagon, Room 3E560                  )
Washington, DC  20310                          )   DATE STAMP: 02/08/2006
                                               )
    Defendant.                                )

JURY ACTION

## COMPLAINT

COMES NOW Plaintiff, Elena Coles, *pro se*, and complains of Defendant, Dr. Francis J. Harvey, Secretary, Department of the Army, Agency, ("Dept. of Army"), as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff brings this action to remedy violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. Jurisdiction of this Court is also based upon 28 U.S.C. § 1331.

2.    Plaintiff, Elena Coles, is a female and at all times relevant herein, has resided in the State of Maryland.

3.    Venue of this action is in the District of Columbia pursuant to 42 U.S.C. §§2000e *et seq*. and 28 U.S.C. §1391.

4. Dr. Francis J. Harvey, is the Secretary for the Dept. of the Army, operating Walter Reed Army Medical Center ("Walter Reed") at 6900 Georgia Avenue, N.W., Washington, D.C. 20307.

5. At all times relevant herein Ms. Coles was an employee of Kelly Services, Inc. working at the Dept. of Army's Walter Reed and directly supervised by Dept. of Army personnel on a daily basis.

6. Kelly Services did not provide direct day to day supervisory functions at the ID Clinic and did not have authority or control over Dept. of Army employees and personnel.

7. Plaintiff has complied with the administrative prerequisites by filing a charge of discrimination and have exhausted all administrative remedies available to her by filing a charge of discrimination, sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC").

8. The EEOC's Decision and Complainant's Right to File a Civil Action (S0900) was sent via regular U.S. mail to Plaintiff from the EEOC on November 15, 2005.

9. Plaintiff was instructed to file her Civil Action Complaint in an appropriate United States District Court within ninety (90) calendar days from the date that she received the decision. For timeliness purposes, the EEOC presumes that the decision was received within five (5) calendar days after it was mailed.

### BACKGROUND FACTS

10. In August of 2000, the Plaintiff received a call from Charles Ansley, the on site supervisor for the Infectious Disease Clinic at Walter Reed about a job opportunity. Mr. Ansley, is a federal government employee, working for the Dept. of the Army.

11. During this conversation, Mr. Ansley informed Ms. Coles of a job opportunity in the Infectious Disease Clinic ("ID Clinic") at Walter Reed.

12. Mr. Ansley was familiar with Ms. Coles' work ethic and superior job performance from her prior employment at the ID Clinic from about March 1998 until September 1998 as a contract employee with Sherikon.

13. The Sherikon contract was awarded to Kelly Services, Inc. at some time after September 1998.

14. Mr. Ansley informed Ms. Coles she would be hired if she were interested in returning to the ID Clinic, but instructed Ms. Coles that in order to work in the ID Clinic she would have to work through Kelly Services, Inc. because it had been awarded the employment contract.

15. Ms. Coles had not worked for Kelly Services prior to this time.

16. On September 6, 2000, Ms. Coles reported to Kelly Services' office, filled out paperwork, and then reported to the ID Clinic for her first day of work.

17. The job duties performed by Ms. Coles were normally performed by full-time federal government employees, but had been contracted out to Kelly Services, Inc. and included entering in-patient lab work into the (CHCS System), scheduling appointments for HIV patients and general clerical activities.

18. Between September 2000 and April 2001 Ms. Coles performed her job duties free from harassment.

19. On or about May 2001, Sgt. Gregory Lawrence was transferred to the ID Clinic in the position of Noncommissioned Officer In Charge of the Clinic ("NCOIC"), a position of authority and control.

3

20. Beginning in May 2001 and continuing through Plaintiff's termination in July 2001, Sgt. Lawrence made sexually explicit comments, emailed unwanted and unwelcome sexually explicit emails to Plaintiff from Dept. of the Army computers during work hours. When Ms. Coles did not respond favorably to Sgt. Lawrence's comments, he became hostile towards her including making physically threatening gestures towards her and directing profanity towards her when giving job assignments.

21. On May 24, 2001, Sgt. Lawrence emailed sexually explicit animated emails to Ms. Coles. Ms. Coles told Sgt. Lawrence that the emails were offensive and asked him not to send email of that nature to her.

22. Sgt. Lawrence ignored Ms. Coles' request and continued sending sexually explicit emails to Ms. Coles until about June 25, 2001.

23. According to Sgt. Lawrence, both he and Charles Ansley would regularly use government computers to send sexually explicit material via email during the workday.

24. On another occasion, Sgt. Lawrence was at Ms. Coles' work-station describing a sexual encounter he had had. Ms. Coles told Sgt. Lawrence that the subject matter made her uncomfortable and asked him to stop. Sgt. Lawrence refused to stop so Ms. Coles walked away from her work-station to avoid being in close proximity while he talked about his sexual encounters.

25. On the day after returning from the file room, Ms. Coles saw Sgt. Lawrence going through her computer and reading her emails. When she confronted Sgt. Lawrence, he jerked his body towards her as if he was going to hit her or push her out of the way.

4

26. The following week Ms. Coles was walking down the hallway and Sgt. Lawrence stepped in front of her, raised his arms and fist towards her, and jerked his body towards her as if he were going to hit her, causing her to fear imminent bodily harm.

27. On Friday July 6, 2001 around 3:30 p.m. Ms. Coles walked into the waiting room to check the score of the tennis match because a doctor had asked her about the score. Ms. Coles was in the waiting room for about two minutes when Sgt. Lawrence walked into the waiting room and said he was watching something. After a brief exchange, Sgt. Lawrence ripped the television cord out of the wall and held his fists up, jerked his body towards Ms. Coles and cursed at her.

28. After this incident, Ms. Coles went to report Sgt. Lawrence to Charles Ansley and Lt. Col. Clifton Hawkes, the chief of the clinic because her working environment had deteriorated to a point that did not allow her to perform her job duties out of fear of being around Sgt. Lawrence.

29. Mr. Ansley told Ms. Coles he was busy and that he would talk to Sgt. Lawrence about his behavior, but he was busy and had to step away.

30. Mr. Ansley returned and Ms. Coles asked if she could speak to Lt. Col. Hawkes about the harassment. Ms. Ansley informed Ms. Coles that Sgt. Lawrence was talking with Lt. Col. Hawkes.

31. Ms. Coles called Dr. Hawkes and told him about the harassment and Dr. Hawkes informed her that he had already spoken with Sgt. Lawrence. Dr. Hawkes told Ms. Coles that he wanted to have a meeting with her and Sgt. Lawrence so, they could resolve the problem and continue to work together. Ms. Coles told Dr. Hawkes that she wanted to write a statement and file a formal complaint because she did not feel safe working around Sgt. Lawrence.

32. On Sunday, July 8, 2001, at 9:04 p.m., Mr. Ansley called Ms. Coles' home from his house. Mr. Ansley told Ms. Coles that Sgt. Lawrence did not like her because he was aware of her sexual harassment complaint in 1998, that he was a career soldier, and that he was not going to allow her to ruin his career.

33. Ms. Ansley tried to persuade Ms. Coles on July 9, 2001 not to write a statement and not to notify any other authority about the harassment.

34. On the morning of July 9, Ms. Coles called and received authorization from Mr. Ansley to stay home because she was unable to speak directly with Kelly Services' management about the harassment and that she was afraid to return with it being properly reported.

35. On July 9, 2001 around 3:00 p.m., Ms. Coles spoke to Lt. Col. Hawkes and was informed that she had been fired because there was a time discrepancy on her time card for July 6, 2001.

36. Later that evening, Ms. Coles received two more calls from Mr. Ansley informing her that he had spoken with Lt. Col. Hawkes and that she did not need to seek legal action. Mr. Ansley also told her that she was not fired because of her time card, but because she offended the staff by wanting to write a statement and have Kelly Services present at the meeting. Mr. Ansley concluded by telling Ms. Coles that it would be detrimental to her in the long run because she would not be able to find another job, that she would be persecuted by others, that people would perceive her as a trouble maker and that she would not win.

37. In total the series of calls by Mr. Ansley lasted over two hours and detailing the reason for the retaliatory actions taken by Walter Reed because she wanted to report sexual harassment by Sgt. Lawrence.

38. On Tuesday, July 10, 2001, Ms. Coles called Kelly services and was informed that she was no longer a Kelly Services employee because Mr. Ansley had informed Kelly Services that she had "quit, hit Sgt. Lawrence and had a time card discrepancy on her time card for July 6 and that she was rude to a doctor."

39. On July 10, 2003, Walter Reed again retaliated against Ms. Coles by instructing Ann DeSoto to libel Ms. Coles in a sham affidavit based on exclusively on Sgt. Lawrence's statements and not based on personal knowledge.

## SEXUAL HARASSMENT

40. Plaintiff repeats and realleges paragraphs 1-39 as though fully set forth herein.

41. At all times relevant herein, Ms. Coles was employed at the Walter Reed under the direct supervision of Charles Ansley, Sgt. Lawrence and Lt. Col. Hawkes.

42. As a female employee, Plaintiff is a member of a protected class.

43. Walter Reed had a duty to maintain Ms. Coles' work environment free from sexual harassment as required by Title VII.

44. By creating, condoning, and benefiting from perpetuating a sexually hostile work environment, Defendant through its agents, members and employees has intentionally and with reckless indifference and disregard, violated Title VII of the Civil Rights Act.

45. By failing to act when protected activities were reported but instead chose to protect its employees, members and agents, Defendant has intentionally and with reckless indifference and disregard violated Title VII, its own policies against sexual harassment and retaliation.

46. The aforementioned conduct, has caused Ms. Coles to suffer sever humiliation, embarrassment, degradation, loss of earnings and emotional distress.

47. WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the defendant as follows:

   a) that a finding be entered that Defendant intentionally discriminated against Plaintiff with malice or reckless indifference to Plaintiff's federally protected rights in violation of Title VII of the Civil Rights action of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991;

   b) that Plaintiff be awarded $300,000 in compensatory and punitive damages;

   c) that Plaintiff be awarded reasonable attorney's fees and costs; and

   d) that Plaintiff be awarded such other relief this Court may deem just and proper.

## **RETALIATION**

48. Plaintiff repeats and realleges paragraphs 1-47 as though full set forth herein.

49. As a female employee, Plaintiff is a member of a protected class.

50. When Plaintiff reported sexual harassment to employees, agents and members of Defendant, Dept. of Army including Lt. Col. Hawkes and Charles Ansley on July 6, 2001, she engaged in a protected activity.

51. A causal connection exists between Ms. Coles reporting sexual harassment on July 6, 2001 and her termination on July 9, 2001.

52. Additionally, to further cause Ms. Coles harm in retaliation of her reporting protected activity, Defendant instructed its employees to fabricate a sham Affidavit on 7/10/03.

53. WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the defendant as follows:

   a) that a finding be entered that Defendant intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's federally protected rights in violation of

Title VII of the Civil Rights action of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991;

b) that Plaintiff be awarded $300,000 in compensatory and punitive damages;

c) that Plaintiff be awarded reasonable attorney's fees and costs; and

that Plaintiff be awarded such other relief this Court may deem just and proper.

Respectfully submitted,

*Elena Coles*
Elena Coles
10118 Campus Way South, #203
Upper Marlboro, MD  20774
(301) 336-1894
Pro se

## DEMAND FOR JURY TRIAL

Jury trial is hereby requested.

*Elena Coles*
Elena Coles