# Exhibit 3

**Capital Reporting Company**

SHEET 23  PAGE 23

23

1   Mona or Linda. I don't remember who it was.
2        Q.   So how did the conversation end with
3   Kelly Services? I mean, what happened? What was
4   the resolution?
5        A.   That they were going to try and send
6   someone because they know that we were in a bind.
7        Q.   Did you tell them that Ms. Coles had quit
8   her job?
9        A.   I don't remember what I told them.
10            (DeSoto Exhibit B was marked for
11            identification.)
12  BY MR. ALFARO:
13       Q.   Great. Ms. DeSoto, I'm going to show you
14  what I have marked here as Exhibit B.
15            (Tenders document to witness.)
16            Do you recall this affidavit that you
17  wrote?
18       A.   Yes, I do.
19       Q.   What's the date on this document,
20  Ms. DeSoto?
21       A.   October -- oh, I'm sorry -- July of 2003.
22       Q.   July 10th.

**Capital Reporting Company**

SHEET 24   PAGE 24

24

```
 1      A.    2003.
 2      Q.    Great.  Could you -- actually, can you
 3  read the caption?  What does it say there?
 4      A.    Affidavit of Ann DeSoto.
 5      Q.    What were the contents of this affidavit?
 6  Ms. DeSoto, can you tell me if that is your
 7  signature?
 8      A.    Yes, it is.
 9      Q.    It is?
10      A.    Yes, it is.  I saw this already.  Yes, it
11  is.
12      Q.    Great.  Can you please read the document?
13      A.    Okay.  Read the whole thing?
14      Q.    Yes.
15      A.    I, Ann DeSoto, swear on the penalty of
16  perjury that the following is true and correct.
17            I am over the age of 18 and have personal
18  knowledge of the facts in this Affidavit.
19            I have worked at Walter Reed Army Medical
20  Center for 14 years.
21            From 1989 to 1999, I worked as a Senior
22  Research Coordinator for the Henry M. Jackson
```

1000 Connecticut Avenue, NW, Suite 505
Washington, D.C. 20006
202.857.DEPO (3376) www.CapitalReportingCompany.com

**Capital Reporting Company**

SHEET 25   PAGE 25

25

1   Foundation in the Infectious Disease Clinic at
2   WRAMC.
3           On July 9, 2001, I called Mona -- I don't
4   know how to pronounce her last name -- at Kelly
5   Services and told her that Elena Coles had quit her
6   job in the Infectious Disease Clinic at WRAMC.
7           I also told Ms. Ghounem -- I believe
8   that's how you pronounce her name -- that WRAMC was
9   not satisfied with Ms. Cole's behavior toward staff
10  or towards patients.
11          Specifically, I told her that WRAMC
12  discovered a discrepancy with Ms. Coles' time card,
13  that WRAMC had received complaints from patients
14  about Ms. Coles, that Ms. Coles was rude to
15  patients an coworkers, and that Ms. Coles had
16  slapped a coworkers hand.
17          I also told Ms. Ghounem that WRAMC wanted
18  Kelly Services to send a replacement for Ms. Coles.
19  At the time I called her about Ms. Coles, I was not
20  aware of any allegations of sexual harassment made
21  by Ms. Coles against Sergeant Gregory Lawrence.
22       Q.   Thank you, Ms. DeSoto.  Is this document

**Capital Reporting Company**

SHEET 26  PAGE 26

26

1  accurate?

2  A.  Yes.

3  Q.  It is.  So you have personal knowledge of
4  all of the facts in this affidavit?

5  A.  I was informed, yes.

6  Q.  It says you have personal knowledge here,
7  though --

8  A.  Yes.

9  Q.  -- when you signed.  You did have
10  personal knowledge?

11  A.  Well, I was informed that the time sheets
12  I was signing were not a full 40-hour week time
13  sheet.  Not all of the time did I sign her time
14  sheets.  When I was there, I signed her time
15  sheets.  I was informed that she was presenting me
16  time sheets.  I signed them because I trusted her,
17  but they were not for 40 hours.

18  Q.  The rest of the allegations are true
19  according to your signature here?

20  A.  Correct.

21  Q.  That's personal knowledge?

22  A.  Correct.

1000 Connecticut Avenue, NW, Suite 505
Washington, D.C. 20006
202.857.DEPO (3376) www.CapitalReportingCompany.com

**Capital Reporting Company**

SHEET 27  PAGE 27

27

```
 1      Q.    That's the reason why you wrote and
 2   signed the affidavit, right, because --
 3      A.    I signed it, yes.
 4      Q.    -- you had personal knowledge of all of
 5   the facts?
 6      A.    Correct.
 7      Q.    So every single allegation in this
 8   affidavit is correct; is true?
 9      A.    Patient and staff behavior, yes.  The
10   time sheets that I was informed, yes.
11      Q.    Why did you write this document?
12      A.    I did not write this document.
13      Q.    Who wrote it for you?
14      A.    I will defer to my lawyer.
15            MR. STOTTLEMYER:  Objection to that
16   question.
17   BY MR. ALFARO:
18      Q.    You still must answer the question
19   unless.
20      A.    I did not write the document.
21            MR. STOTTLEMYER:  It's attorney/client
22   privilege.
```

**Capital Reporting Company**

SHEET 28   PAGE 28

28

1        MR. ALFARO:  Attorney/client privilege.
2   Specifically, Mr. Stottlemyer, you must give me a
3   reason why it's privileged.
4        MR. STOTTLEMYER:  Because the Agency
5   requested, as a matter of court process, to either
6   supply this individual for deposition or to provide
7   an affidavit.  Based on attorney/client contacts,
8   this is what developed.
9   BY MR. ALFARO:
10       Q.   You're still going to have to answer this
11  question because it was --
12       A.   What was the question?
13       Q.   The question is, who wrote it?
14       A.   I have no idea who wrote it.
15       Q.   What you're telling me is that somebody
16  sent it to you and said sign here, basically?
17       A.   After reviewing it and making sure that
18  it was true, yes.  I would not sign anything or put
19  my name on anything that is not true.
20       Q.   Okay.  During the fact-finding hearing of
21  August 12th, 2003, you testified under oath that
22  you did not write this document?

1000 Connecticut Avenue, NW, Suite 505
Washington, D.C. 20006
202.857.DEPO (3376) www.CapitalReportingCompany.com

**Capital Reporting Company**

SHEET 29  PAGE 29

29

1    A.    Actually -- this document?

2    Q.    Yes.

3    A.    I did not.

4    Q.    You also testified, Ms. DeSoto -- and

5  correct me if I'm wrong -- that someone sent this

6  document to you and told you to sign it?

7    A.    Correct.

8    Q.    Who was that person?

9    A.    I have no idea.  I do not know.

10    Q.    Ms. DeSoto --

11    A.    I cannot pull out the name from the air

12  because I don't know.

13    Q.    You are under oath.  How can you sign a

14  document --

15    A.    I do not know the name of the person that

16  it came from.

17    Q.    Was it Kelly Services?

18    A.    No.

19    Q.    Was it the Army?

20    A.    No.  It was our legal services.

21    Q.    It was the legal services of the Army?

22    A.    Uh-huh.  I'm telling you -- I'm not

**Capital Reporting Company**

SHEET 30   PAGE 30

30

1   lying -- I do not know the name of the person.

2   Q.   Let me get this correct. You signed an
3   affidavit that somebody --

4   A.   No, not someone. Our own legal. I work
5   WRAMC. It was our own legal. As I said, I would
6   not sign anything that, for me, is not true.

7   Q.   Well, for the record, I'm going to have
8   to write a Motion to Compel. You know, you have to
9   answer who ---

10   A.   I don't know who. I just told you, our
11   legal services.

12   Q.   Ms. DeSoto, I don't want to be rude in
13   any manner, but I'm just reading what you said
14   here. It says that you have personal knowledge of
15   all of the allegations here. For you to sign an
16   affidavit that somebody sent to you and you don't
17   remember who sent it to you --

18   A.   Actually, the legal offices -- I don't
19   know what complaint she made. I think she went --
20   I don't know how it came about. All I know is, the
21   legal offices at Walter Reed got in touch with me
22   knowing that she was going to go -- I don't know.

**Capital Reporting Company**

SHEET 31  PAGE 31

31

```
 1   I was brought in.  They asked me to read this and
 2   asked me if this is true and I swore on my life, on
 3   the Bible, that this was -- I'm not going to sign
 4   anything unless -- this had to do with our legal
 5   offices.
 6        Q.   Correct.
 7        A.   I would not let anyone state anything
 8   that's not true and me sign to something that's not
 9   true.
10        Q.   That's fine, Ms. Ann DeSoto.
11        A.   I cannot change that because that's the
12   truth.
13        Q.   Correct.  Again, you don't know who sent
14   it to you?
15        A.   Our legal offices --
16        Q.   Legal offices --
17        A.   -- but I do not know the name.  I mean,
18   this was a while back, too.
19        Q.   Do you remember who told you to sign it?
20        A.   I don't remember who told me to sign
21   it --
22        Q.   But it was the legal --
```

**Capital Reporting Company**

SHEET 32   PAGE 32

32

1   A.   -- because we have a lot of our own legal
2   people there.  I don't remember who.  There were
3   several people involved with this and I don't
4   remember.
5   Q.   You're sure it was the legal department,
6   correct?
7   A.   I believe so, yes.
8   Q.   It was no one from Kelly Services at that
9   point?
10  A.   I wouldn't sign anything from anybody
11  from Kelly Services --
12  Q.   I'm just asking you because --
13  A.   -- because I don't work for Kelly.
14  Q.   I'm just asking you this because this is
15  the affidavit that Kelly Services used in their
16  Motion for Summary Judgment to dismiss Ms. Coles'
17  complaint.
18  A.   I had nothing to do with Kelly -- I would
19  not sign anything for Kelly Services.  I do not
20  work for Kelly Services.
21  Q.   Great.  Thank you.  Again, I'm going to
22  have to write a Motion to Compel.  You're going to

**Capital Reporting Company**

SHEET 33  PAGE 33

33

1  have to answer this question as to who sent you
2  this.
3      A.   And they will get the same reply because
4  I don't know.  I have no name.
5      Q.   We'll find the records within the Army
6  and find out whoever wrote it.
7      A.   Okay.
8      Q.   Again, let me get something correct here.
9  You signed the affidavit.  You stated you have
10 personal knowledge.  All of the allegations here,
11 according to you, are true --
12     A.   Correct.
13     Q.   -- however, you know, somebody sent it to
14 you and told you to sign it but you don't know who?
15     A.   I don't remember now.
16     Q.   You don't know who.  You stated earlier
17 that you don't know who --
18     A.   No, I don't.  I don't know our legal
19 people.
20     Q.   Again, let me remind you that this
21 affidavit -- the only purpose of this affidavit was
22 basically to be used to dismiss Ms. Cole's case