## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELENA COLES,**      ) | |
| ) | |
| **Plaintiff,**      ) | |
| ) | |
| **v.**      ) | **Civil Action No. 06-223 (RMC)** |
| ) | |
| **FRANCIS J. HARVEY,**      ) | |
| **SECRETARY, DEPT. OF THE ARMY,**    ) | |
| ) | |
| **Defendant.**      ) | |
| ) | |

### <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendant Francis J. Harvey's motion to dismiss or, in the alternative, for summary judgment. Plaintiff Elena Coles, who is proceeding *pro se*, opposes the motion. Ms. Coles alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by subjecting her to sexual harassment and then retaliating against her after she complained. Having considered the parties' briefs and accompanying materials, the Court will grant Defendant's motion in part and deny it in part.

### I.  BACKGROUND

This case is related to an action that Ms. Coles brought against Kelly Services, Inc., a temporary employment agency for which Ms. Coles worked at the time of the alleged harassment. In that case, Ms. Coles — who had been assigned by Kelly Services to work at Walter Reed Army Medical Center ("WRAMC") — argued that Kelly Services had violated Title VII by subjecting her to sexual harassment at WRAMC and then discharging her when she complained. This Court granted Kelly Service's motion for summary judgment and dismissed

Ms. Coles's complaint in October 2003. *See Coles v. Kelly Servs., Inc.*, 287 F. Supp. 2d 25

(D.D.C. 2003). Because the operative facts in this action are identical to the facts in Ms. Coles's

prior lawsuit, the Court will provide only a summary here; a more detailed description can be

found in Court's prior opinion. *See id.* at 26-30.

       According to the present Complaint, in August 2000 Ms. Coles received a

telephone call from Charles Ansley, the on-site supervisor for the Infectious Disease Clinic

("Clinic") at WRAMC.[1] Compl. ¶ 10. The purpose of Mr. Ansley's call was to inform Ms.

Coles of a job opportunity as a receptionist at the Clinic and to offer her the position if she were

interested. *Id.* ¶¶ 11-14. Ms. Coles responded that she was interested, and Mr. Ansley instructed

her to apply for the job through Kelly Services, which held a contract to provide clerical workers

to WRAMC. *Id.* ¶ 14. Ms. Coles did so and was hired on September 6, 2000. *Id.* ¶ 16.

       In May 2001 Sergeant Gregory Lawrence became the Non-Commissioned Officer

in Charge of the Clinic. *Id.* ¶ 19. Shortly afterward, Sgt. Lawrence allegedly began harassing

Ms. Coles. *Id.* ¶ 20. Specifically, Ms. Coles claims that Sgt. Lawrence sent her several sexually

explicit e-mails between May 24 and June 25, 2001 and that, while standing at her work-station,

he discussed in explicit terms a sexual encounter he had had with another woman. *Id.* ¶¶ 21-23.

When Ms. Coles told Sgt. Lawrence that she wanted this behavior to cease, she asserts that Sgt.

Lawrence began to make physically threatening gestures toward her and that he swore at her and

used profanity. *Id.* ¶¶ 25-26.

---

   [1] Ms. Coles had previously worked at WRAMC's Dermatology Clinic for a different
contract company. During that stint at WRAMC, Ms. Coles also complained of sexual
harassment. After raising that complaint, she was transferred to the Infectious Disease Clinic,
where she became acquainted with Mr. Ansley. *See Coles*, 287 F. Supp. 2d at 26 n.4.

This course of harassment allegedly came to a head on July 6, 2001, when Ms. Coles had a run-in with Sgt. Lawrence in the Clinic's waiting room. *Id.* ¶ 27. After that incident, Ms. Coles reported Sgt. Lawrence's alleged behavior for the first time. *Id.* ¶ 28. She first went to see Mr. Ansley, complaining that Sgt. Lawrence was sexually harassing and physically intimidating her. *Id.* ¶ 28. Mr. Ansley was "busy at the moment" and told Ms. Coles to wait in his office, during which time she called Kelly Services and left a message with the receptionist. *Id.* ¶ 29-30; *Coles*, 287 F. Supp. 2d at 27. Mr. Ansley returned to his office shortly after Ms. Coles concluded her call. Compl. ¶ 30; *Coles*, 287 F. Supp. 2d at 27.

In the meantime, Sgt. Lawrence was meeting with Dr. Clifton Hawkes, Chief of the Infectious Disease Service, to relate his version of the events. *Coles*, 287 F. Supp. 2d at 27. Ms. Coles later spoke to Dr. Hawkes by telephone from her home. Compl. ¶ 31. She reported her allegations against Sgt. Lawrence, and Dr. Hawkes stated that he wanted to arrange a meeting for Ms. Coles, Sgt. Lawrence, and himself to discuss the situation and improve their ability to work together. *Id.* Ms. Coles responded that she was going to prepare a written statement and file a formal complaint because she did not feel safe working around Sgt. Lawrence. *Id.*

Three days later, on Monday July 9, Mr. Ansley contacted Ms. Coles and purportedly encouraged her not to write a statement or to report sexual harassment by Sgt. Lawrence. *Id.* ¶ 33. Ms. Coles informed Mr. Ansley that she was afraid of Sgt. Lawrence and did not want to return to WRAMC until she had reported sexual harassment to Kelly Services. *Id.* ¶ 34. Mr. Ansley gave her permission to stay home until she had done so. *Id.* At the same time, unbeknownst to Ms. Coles, Ann DeSoto, a Supervisory Administrative Coordinator at the Clinic, contacted Kelly Services and stated that Ms. Coles had falsified her timecard, been rude

3

to patients and coworkers, and had slapped a coworker's hand. *See Coles*, 287 F. Supp. 2d at 28-29. She requested that Kelly Services send a replacement for Ms. Coles. *Id.*

Later that day, Ms. Coles called Dr. Hawkes. Compl. ¶ 35. Dr. Hawkes told her that Kelly Services had fired her because of a timecard discrepancy. *Id.* Ms. Coles subsequently spoke to Mr. Ansley, who told her that there was no timecard discrepancy — she had been fired because she insisted on filing a formal complaint against Sgt. Lawrence. *Id.* ¶ 36. The next day, July 10, 2001, Ms. Coles called Kelly Services and was informed that her job at WRAMC had been terminated because she had falsified her timecard and had been rude to a doctor. *Id.* ¶ 38.

Ms. Coles sued Kelly Services on September 19, 2002, alleging sexual harassment and retaliation in violation of Title VII. On October 17, 2003, this Court granted Kelly Service's motion for summary judgment and dismissed Ms. Coles's complaint. *See Coles*, 287. F. Supp. 2d at 25. The Court of Appeals for the District of Columbia Circuit affirmed that ruling on July 20, 2004. *See Coles v. Kelly Services*, 105 Fed. Appx. 275 (D.C. Cir. 2004). On February 8, 2006, Ms. Coles filed the instant action against Defendant based on the same factual and legal allegations. On September 26, 2006, Defendant moved to dismiss or, in the alternative, for summary judgment. That motion has been fully briefed and is now ripe for decision.

## II.  STANDARD OF REVIEW

### A.     Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Federal courts are courts of limited jurisdiction and the law presumes

that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint "but may also consider material outside of the pleadings in its effort to determine whether [it] has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

### B.      Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The court need not, however, accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235,

242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

### III. ANALYSIS

**A.    Subject Matter Jurisdiction — Ms. Coles's Employment Status.**

Defendant's first argument is that this Court lacks subject matter jurisdiction over the Complaint because Ms. Coles was not a federal employee and therefore Defendant has sovereign immunity with respect to her Title VII claims. *See* Def.'s Mem. of P. & A. In Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mem.") at 9. Ms. Coles responds that she was a joint employee of Kelly Services and the Department of the Army and, in any case, the question of her employment is a fact-based inquiry that should not be decided at this stage in the proceeding. *See* Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 11-12.

There is no question that the United States has not waived its sovereign immunity for Title VII claims brought by persons who are not government employees. *See, e.g.*, *Bryant v. Orkand Corp.*, 407 F. Supp. 2d 29, 33 (D.D.C. 2005). Thus, if Ms. Coles was not a federal employee, this Court lacks jurisdiction over her Title VII claims. *See, e.g.*, *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 3 (D.D.C. 1998). Defendant relies on *Redd v. Summers*, 232 F.3d 933 (D.C. Cir. 2000) to establish that Ms. Coles was not a federal employee. Def.'s Mem. at 10. In that case, the D.C.

6

Circuit applied an 11-factor test to determine that a contract tour guide at the Bureau of Engraving and Printing was not jointly employed by a federal agency for purposes of the Rehabilitation Act. *See Redd*, 232 F.3d at 938. The court noted that the 11-factor test, which it first announced in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979), had never been invoked to resolve an issue of joint employment. *Id.* Nevertheless, the court employed the *Spirides* factors because the parties did not argue the point. *Id.*

It now appears that this Court is faced with the question that the D.C. Circuit passed over in *Redd*: Does *Spirides* control in cases involving alleged joint employment, or should some other test inform that analysis? Reading between the lines in *Redd*, the Court concludes that *Spirides* does not control; rather, the joint-employment test laid out in *NLRB v. Browning-Ferris Indus. of Penn., Inc.*, 691 F.2d 117, 123 (3d Cir. 1982) is the applicable test for determining whether a plaintiff is a joint employee. *See Redd*, 232 F.3d at 938 (noting that "[d]espite the parties' agreement, we doubt whether the *Spirides* test is suited to this case" and citing *Browning-Ferris* as a "fairly standard formulation" of the joint-employment test).

In *Browning-Ferris*, the Third Circuit, relying on the Supreme Court's decision in *Boire v. Greyhound Corp.*, 376 U.S. 473 (1964), held that two or more businesses are "joint employers" when "it can be shown that they share or co-determine those matters governing essential terms and conditions of employment . . . ." 691 F.2d at 1124. Whether one of the alleged joint employers "has retained for itself sufficient control [over] the terms and conditions of employment of the employees who are employed by the other [alleged joint] employer . . . 'is essentially a factual issue'" and does not turn on whether there is an independent-contractor relationship between them. *Id.* at 1123 (quoting *Boire*, 376 U.S. at 481).

Here, Defendant raises factual issues that might shed light on whether WRAMC and Kelly Services co-determined matters governing the essential terms and conditions of Ms. Coles's employment. Specifically, Defendant argues that the Army did not exercise control over Ms. Coles's employment because Kelly Services "provided on-site supervision and Army personnel did not rate [Ms. Coles's] performance." Def.'s Mem. at 10. Defendant also argues that "[i]t was Kelly, not the Army, that paid [Ms.] Coles and that withheld Social Security taxes and other taxes from [her] pay," and that Ms. Coles's "rate of pay was set by Kelly, not the Army." *Id.* at 12. Ms. Coles responds that "[i]n fact, [the] Department of the Army retained exclusive control over every aspect of the 'means and manner' of [her] job duties." Pl.'s Opp. at 12. Moreover, Ms. Coles contends that genuine issues of fact exist with respect to her status as a joint employee. *See id.* at 13.

The Court concludes that it cannot conclusively determine on the current record whether Ms. Coles was jointly employed by the Army and Kelly Services. Because this question goes to the Court's jurisdiction, the Court may consider facts outside the pleadings in determining the nature of Ms. Coles's employment. *See Alliance for Democracy*, 362 F. Supp. 2d at 142. Nonetheless, Defendant's factual contentions fall short of negating the Complaint's well-pled allegations. According to the Complaint, Mr. Ansley had authority to direct Kelly Services to hire Ms. Coles, Compl. ¶¶ 11-14; Defendant's employees supervised Ms. Coles on a daily basis, *id.* ¶ 5; Ms. Coles's job duties were "normally performed by full-time federal government employees," *id.* ¶ 17; and Defendant's employees had authority to terminate Ms. Coles's employment, *id.* ¶ 38. Assuming these allegations to be true and taking them in the light most favorable to Plaintiff, the Court finds that Ms. Coles has sufficiently pled that she was a joint employee of Defendant and Kelly Services. Defendant's factual assertions do not establish the contrary as a matter of law.

There is clearly a genuine dispute about who supervised Ms. Coles, and the fact that Kelly Services paid Ms. Coles and determined her salary, while relevant, does not conclusively establish that Kelly Services retained exclusive control over the essential terms and conditions of her employment.

This Court's decision in *Bryant v. Orkand Corp.*, 407 F. Supp. 2d 29 (D.D.C. 2005), does not compel a different conclusion. *See* Def.'s Mem. at 10-13. That decision did not address the question of joint employment; it followed the *Redd* analysis, which the Court has determined to be inapplicable here. Moreover, that decision placed primary importance on the fact that the federal agency did not supervise or evaluate the putative employees' performances. 407 F. Supp. 2d. at 33-34. While that may be pivotal to deciding whether an employee is an independent contractor, the Court does not believe that supervision and evaluation are determinative of the joint employment question. Given the procedural posture of this case and the fact that Ms. Coles is proceeding *pro se*, the Court finds that Ms. Coles has pled facts sufficient to establish subject matter jurisdiction. Defendant is free to raise its lack of jurisdiction argument again after a more complete factual record has been developed through discovery.

**B.    Ms. Coles's Discrimination Claim.**

Next, Defendant argues that Ms. Coles's hostile-work-environment claim is barred by collateral estoppel because this Court already concluded, in the context of Ms. Coles's lawsuit against Kelly Services, that the claim fails as a matter of law. Def.'s Mem. at 13-14. The Court agrees that, for the same reasons that Ms. Coles's discrimination claim failed as to Kelly Services, the current discrimination claim is legally deficient and must be dismissed.

In its judgment affirming this Court's dismissal of Ms. Coles's discrimination claim against Kelly Services, the D.C. Circuit made clear that the facts of this case cannot support a Title

VII claim based on alleged sexual harassment:

> Under Title VII an employer may be held liable for harassment at the hands of a non-supervisory co-worker only if it knew of harassment and failed to take prompt and appropriate remedial action. [Citation.] As [Ms. Coles] never returned to the Walter Reed Army Medical Center after reporting the alleged sexual harassment on July 6, 2001, [Kelly Services] cannot be said to have failed to take appropriate measure to end the alleged harassment.

*Coles v. Kelly Servs.*, 105 Fed. Appx. 275, 276 (D.C. Cir. 2004). The same holds true even assuming that Defendant was Ms. Coles's joint employer: because Ms. Coles never returned to work at WRAMC after she first reported that Sgt. Lawrence was allegedly harassing her, Defendant cannot be said to have failed to take appropriate remedial measures. Accordingly, Ms. Coles has no viable harassment claim based on the facts alleged in the Complaint.

## C.    Ms. Coles's Retaliation Claim.

Although Defendant's motion seeks dismissal of the entire Complaint, Defendant's briefs do not squarely address Ms. Coles's retaliation claim. According to the Complaint, Mr. Ansley, Dr. Hawkes, and Ms. DeSoto falsely informed Kelly Services that Ms. Coles had lied on her timecard and had been rude to WRAMC staff and patients in retaliation for her insistence on filing a sexual harassment complaint against Sgt. Lawrence. *See* Compl. ¶¶ 48-52. As a result, Kelly Services terminated Ms. Coles's assignment at WRAMC. *See id.* ¶ 51. These allegations, which the Court assumes to be true at this stage in the proceedings, are sufficient to establish unlawful retaliation in violation of Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (holding that a Title VII retaliation claim requires a showing that (1) plaintiff engaged in a statutorily protected activity, and (2) the employer took some action that "a reasonable employee would have found . . . materially adverse, 'which in this context means it well might have dissuaded

10

a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

　　　　The past litigation regarding Ms. Coles's retaliation claim against Kelly Services does preclude her from raising the present retaliation claim against Defendant.  This Court's prior decision dismissing that claim was based on Ms. Coles's inability to rebut Kelly Service's legitimate, non-discriminatory reason for terminating her assignment at WRAMC — *i.e.*, Ms. DeSoto's report that Ms. Coles had falsified a timecard and was otherwise unsatisfactory in her job performance.  *See Coles*, 287 F. Supp. 2d at 33.  Ms. Coles could not rebut that evidence because it was undisputed that, at the time Kelly Services received that information from Ms. DeSoto, Kelly Services was unaware that Ms. Coles had lodged a sexual harassment complaint against Sgt. Lawrence.  *See id.* at 33-34.  Whether Ms. DeSoto was being truthful when she reported that information was therefore irrelevant to Ms. Coles's retaliation claim against *Kelly Services*.  *See id.* at 34.

　　　　Here, however, Ms. Coles brings a retaliation claim against *Defendant*.  In the context of this claim, the fact that Ms. DeSoto was allegedly untruthful and had a retaliatory motive is obviously relevant — as this Court expressly noted in its decision dismissing the *Kelly Services* action.  *See id.* ("While the veracity of and factual basis for Ms. DeSoto's statements to Kelly Services on July 9, 2001, might be relevant in a lawsuit against *Walter Reed*, they have no bearing on Ms. Coles's retaliation claim against Kelly Services.").  Accordingly, the Complaint states a valid claim for unlawful retaliation in violation of Title VII.

## IV.  CONCLUSION

　　　　For the reasons stated above, the Court will grant Defendant's motion in part and deny it in part.  The Court finds that there are insufficient facts in the record to decide the

11

jurisdiction question conclusively and, because the Complaint adequately alleges facts that — if

true — could support jurisdiction, the Court will deny Defendant's Rule 12(b)(1) motion to

dismiss without prejudice.  Ms. Coles may proceed with her Title VII claim based on alleged

retaliation, but the Court will grant Defendant's Rule 12(b)(6) motion to dismiss with respect to

her claim based on alleged sexual harassment.  A memorializing order accompanies this

Memorandum Opinion.


Date:  January 11, 2007                              _____/s/_____
                                                    Rosemary M. Collyer
                                                    United States District Judge